UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00631-RGJ-CHL

DESHAWN F.,[1]                                                                      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                                Defendant.

## REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff, Deshawn F. ("Claimant").  Claimant

seeks judicial review of the final decision of the Commissioner of Social Security ("the

Commissioner").  (DN 1.)  This case was referred to the undersigned Magistrate Judge to prepare

a report and recommendation.  (DN 13.)  Claimant and the Commissioner each filed a Fact and

Law Summary.  (DNs 14, 20.)  Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the

Commissioner be **AFFIRMED**.

## I.      BACKGROUND

On or about March 26, 2019, Claimant filed an application for supplemental security

income ("SSI") alleging disability beginning on April 1, 2018.  (R. at 49, 52, 65, 68, 161-69, 669.)

On July 23, 2020, Administrative Law Judge ("ALJ") Stacey L. Foster ("the ALJ") conducted a

hearing on Claimant's application.  (*Id.* at 25-48.)  In a decision dated November 25, 2020, the

ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to

determine whether an individual is disabled.  (*Id.* at 666-85.)  In doing so, the ALJ made the

following findings:

---

[1] Pursuant to General Order 22-05, the Plaintiff in this case is identified and referenced solely by first name and last initial.

1.      The claimant has not engaged in substantial gainful activity since March 26,
        2019, the application date.  (*Id.* at 671.)

2.      The claimant has the following severe impairments: degenerative disc
        disease of the lumbar spine, myofascial pain syndrome, and bicipital
        tendinitis of the right shoulder.  (*Id.*)

3.      The claimant does not have an impairment or combination of impairments
        that meets or medically equals the severity of one of the listed impairments
        in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.* at 672.)

4.      [T]he claimant has the residual functional capacity to perform sedentary
        work as defined in 20 CFR 416.967(a) (i.e., lifting and/or carrying 10
        pounds occasionally and less than 10 pounds frequently, standing and/or
        walking (with normal breaks) for a total of about 2 hours in an 8-hour
        workday, sitting (with normal breaks) for a total of about 6 hours in an 8-
        hour workday, and pushing and/or pulling consistent with lifting and/or
        carrying) except, he can occasionally climb ramps and stairs, but never
        ladders, ropes or scaffolds. He can occasionally stoop, kneel, crouch and
        crawl. He should avoid concentrated exposure to vibration and hazards. He
        can only occasionally reach overhead with his right upper extremity.  (*Id.* at
        672.)

5.      The claimant is unable to perform any past relevant work.  (*Id.* at 678.)

6.      The claimant . . . was 42 years old, which is defined as a younger individual
        age 18-44, on the date the application was filed.  (*Id.* at 679.)

7.      The claimant has at least a high school education.  (*Id.*)

8.      Transferability of job skills is not an issue in this case because the claimant's
        past relevant work is unskilled.  (*Id.*)

9.      Considering the claimant's age, education, work experience, and residual
        functional capacity, there are jobs that exist in significant numbers in the
        national economy that the claimant can perform.  (*Id.*)

10.     The claimant has not been under a disability, as defined in the Social
        Security Act, since March 26, 2019, the date the application was filed.  (*Id.*
        at 680.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her

request for review on August 18, 2021.  (*Id.* at 1-6, 158-60.)  At that point, the ALJ's decision

became the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a) (2021); *see also* 42

U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Accordingly, Claimant timely filed this action on October 13, 2021.  (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of SSI to persons with disabilities.  *See* 42 U.S.C. §§ 1381-1383f.  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2021).

### A.    Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the

Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.     Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. § 416.920 (2021). In summary, the evaluation process proceeds as follows:

(1)     Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)     Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)     Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)     Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)     Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.909 (2021).

performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 392 (6th Cir. 1999).

### C.  Claimant's Contentions

Claimant argued that the ALJ erred in several ways. He argued the ALJ supported her determination of his RFC by a selective reading of the record that rendered her decision unsupported by substantial evidence, the ALJ erred in her determination of whether he was eligible for a closed period of disability, the ALJ improperly evaluated his pain, and the ALJ erred in her treatment of the opinions of consultative examiner ("CE") Dr. Peter J. Urda ("Dr. Urda") and his treating orthopedic surgeon Dr. David Rouben ("Dr. Rouben"). (DN 14, at PageID # 1401-10.) He claimed that these errors in the ALJ's determination of his RFC caused errors at later steps. (*Id.* at 1411.) The undersigned will address these arguments below.

### 1.  RFC

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 416.945(a)(1), 416.946(c) (2021). The ALJ bases his or her determination on all relevant evidence in the case record. 20 C.F.R. § 416.945(a)(1)-(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 416.920c, 416.929 (2021). The undersigned will address Claimant's individual allegations of error regarding the ALJ's RFC determination separately below.

a)      **Selective Reading of the Record**

The Claimant argued that the ALJ supported her determination of his RFC by selective citations to the record that failed to take into account evidence detracting from her conclusion, conflated time periods, and parsed evidence.  (DN 14, at PageID # 1402-10.)  As a starting point, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."  *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").  However, the Court examines the record as a whole, including whatever evidence "in the record fairly detracts from its weight," without "resolv[ing] conflicts in evidence or decid[ing] questions of credibility" to determine whether an ALJ's decision is supported by substantial evidence.  *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (quoting in part *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) and citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)).  Thus, where an ALJ has "improperly cherry picked evidence" instead of "more neutrally weighing the evidence," his or her decision is unlikely to be supported by substantial evidence.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *see Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("[S]ubstantiality of evidence evaluation does not permit a selective reading of the record.").

Claimant's injuries stem from an April 1, 2018, motor vehicle accident in which his vehicle was t-boned on its passenger side causing the car to spin and collide with a pole on the driver's side.  (R. at 346.)  Claimant was wearing his seatbelt, and the air bags deployed.  (*Id.*)  At University of Louisville Hospital after the accident, Claimant complained of pain on his right side

from head to toe. (*Id.*)  A rib x-ray revealed no fractures, and Claimant was discharged.  (*Id.* at 359, 344-59.)  After the accident, Claimant treated with Synergy Injury Care between April 3, 2018, and June 14, 2018.  (*Id.* at 276-305, 463-589.)  His initial diagnosis was cervical, thoracic, and lumbar sprain/strain and right shoulder and right hip sprain.  (*Id.* at 303.)  On April 11, 2018, he underwent x-rays of his right hip, right shoulder, cervical spine, and lumbar spine.  (*Id.* at 276-79, 463-66.)  The x-rays of his right hip and shoulder were unremarkable, but his cervical and lumbar x-rays revealed nonspecific straightening of the normal cervical/lumbar lordosis consistent with a sprain/strain.  (*Id.*)  An April 16, 2018, MRI of his right shoulder was unremarkable except for os acromiale.  (*Id.* at 282, 420.)  An April 16, 2018, MRI of his lumbar spine revealed a two to three millimeter broad-based posterior disc protrusion at L4-5 and a six to seven millimeter broad-based posterior disc protrusion at L5-S1.  (*Id.* at 280-81, 418-19, 467-68.)  He was given pain medication—Ibuprofen at first but then Norco when he received no relief—and participated in physical therapy.  (*Id*. at 276-305, 463-589.)  He later claimed physical therapy made his problems worse and refused to go back.  (*Id.* at 363.)  His pain level fluctuated throughout treatment at Synergy.  (*Id.* at 276-305, 463-589.)  He was discharged on June 14, 2018, with a note that he had reached the maximum benefit from the acute care services provided by Synergy and advised to contact his primary care physician if pain and symptoms persisted.  (*Id.* at 283, 490.)

On August 15, 2018, he began treatment at Aptiva Health for his right shoulder pain and low back pain.  (*Id.* at 363-64, 444-45.)  A September 13, 2018, MRI on his right shoulder revealed mild subscapularis tendinopathy without any tears.  (*Id.* at 367, 450.)  He was treated with lumbar epidural steroid injections, which gave him significant relief for two to three weeks, and subacromial injections in his right shoulder, which did give him some improvement.  (*Id.* at 364-65, 368-69, 373, 426-27, 429, 432-33, 445, 447, 451-52, 457.)  After one injection, he described

his relief as being up to 40-50% of his pain for three weeks.  (*Id.* at 435.)  He also underwent medial branch blocks.  (*Id.* at 440, 442.)

When continuing treatment at Aptiva, between November 16, 2018, and January 4, 2019, he treated with Kentucky Pain Associates for acute pain management, which provided him with pain medication, lumbar facet injections, and trigger point injections, the latter of which he said provided only three to four days of greater than 50%  relief.  (*Id.* at 306, 313-14, 316, 318, 320, 324, 326.)  Despite the less than full relief, he requested additional injections.  (*Id.* at 322.)  He also reported that the medications proscribed by that office had been helpful though he still had continued pain.  (*Id.*)

When Kentucky Pain Associates transitioned him out of acute pain management due to his having reached maximum medical improvement from their treatment, he transitioned to Ohio Valley Pain Institute for chronic pain management.  (*Id.* at 323.)  He treated there beginning on January 28, 2019, and continued to receive interarticular injections from his Ohio Valley providers. (*Id.* at 402, 407-09, 413, 447, 633-34, 643, 652-55, 660.)  He reported an excellent response to injections and at one point stated that a steroid injection provided him six to eight weeks of relief, allowing him to play basketball for the first time in years, though he did state that even that injection wore off.  (*Id.* at 399, 403, 640, 644.)  He had at least one additional lumbar medial branch block, which he reported provided a 100% reduction in pain for three days before symptoms gradually returned at up to 50% of prior pain levels; he also reported breakthrough pain with certain activities.  (*Id.* at 625, 631-32.)  He indicated that his pain medication improved his function and that he experienced no side effects from his medication.  (*Id.* at 625.)  He also had lumbar radiofrequency ablations that provided him significant relief for several months and reduced his pain levels to one or zero except with certain activities.  (*Id.* at 601, 621-24.)  However,

approximately three to three-and-a-half months after the ablations, he reported gradual return of symptoms though he indicated he would do a repeat radiofrequency ablation "as soon as he can." (*Id.* at 612, 615.)

In October 2019, Claimant had another MRI of his lumbar spine, which showed mild disc space narrowing at L5-S1 and mild degenerative disc disease at L5-S1. (*Id.* at 606.) During Claimant's October 14, 2019, visit, his treating orthopedic surgeon, Dr. Rouben, wrote that given Claimant's MRI results, anything short of a bilateral decompression, structural stabilization and fusion surgery at L5-S1 was "going to fail." (*Id.* at 604.) Dr. Rouben wrote during Claimant's November 4, 2019, visit that "from a perspective of getting better and responding to conservative treatment, [Claimant] ha[d] failed." (*Id.* at 609.) Dr. Rouben explained that Claimant needed surgery but couldn't afford it due to "financial roadblocks." (*Id.*) He then provided an opinion ins support of Claimant's disability claim regarding Claimant's functioning that essentially allowed Claimant to perform no work or other activity whatsoever and relied heavily on a perceived need for surgery. (*Id.* at 590-95.) However, during a March 9, 2020, visit, Dr. Rouben noted that Claimant "was better" after having radio frequency ablations at Ohio Valley Pain and wanted to continue conservative treatment. (*Id.* at 596.) Dr. Rouben ordered an update of Claimant's imaging records and stated with respect to a treatment plan, "We will ask [Claimant] to participate in physical therapy at ProRehab with our express intent of getting to a point where we can get him back to work upon his return in 4 weeks. If not, then surgical intervention must be considered." (*Id.* at 597.) During an April 27, 2020, visit, Dr. Rouben noted the dramatic relief the radio frequency ablation had provided, reiterated a need for Claimant to do physical therapy to learn his limitations, noted that Claimant could have another ablation in six months if pain reoccurred, and stated that the success of the ablations meant that Dr. Rouben thought Claimant could "avoid

surgery." (*Id.* at 601-02.)  Dr. Rouben stated that surgery "makes no sense at this point, at this juncture nor [*sic*] in the future at least for right now as we see him today." (*Id.* at 602.)

On July 13, 2020, Claimant had MRIs of his lumbar spine and right shoulder. (*Id.* at 662-65.)  The MRI of his lumbar spine documented degenerative disc disease combined with facet arthropathy at L4-5 and L5-S1, a three millimeter superimposed central posterior disc protrusion at L5-S1, and neural foraminal stenosis at L5-S1 "with mass effect on exiting L5 nerve roots." (*Id.* at 663.)  The MRI of his right shoulder was degraded due to his motion but documented no tears and a small subchondral cyst in the humeral head. (*Id.* at 665.)  The July MRIs are the last-dated medical evidence of record.

The ALJ found that Claimant had the RFC to perform sedentary work but could only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; and only occasionally reach overhead with his right upper extremity. (*Id.* at 672.)  The ALJ also found that Claimant should avoid concentrated exposure to vibration and hazards. (*Id.*)  In support, she cited to Claimant's own recitation of his limitations both in forms he filled out as part of his application and in his testimony at the hearing. (*Id.* at 672-73 (citing *id.* at 30-44, 185-92).)  She noted that she considered the information provided by one Ms. Wilson, the mother of Claimant's children. (*Id.* at 673 (citing *id.* at 207-15).)  The ALJ found that though Claimant's impairments could cause his alleged symptoms, Claimant's "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 673.)  She cited in support to his medical records from the emergency room after his car accident (*id.* at 673 (citing *id.* at 344-59)); his treatment at Synergy, including his physical therapy and imaging records (*id.* at 673-74 (citing *id.* at 276-305, 463-589)); his pain management treatment, including injections

10

and medications (*id.* at 674 (citing *id.* at 306-16); *id.* at 675 (citing *id*. at 612-60)); his orthopedic records from Aptiva dated February 2019, June 2019, July 2019, October 2019, and April 2020 (*id.* at 674-76 (citing *id.* at 377-79, 426-27, 432-33, 435-37, 601-02, 604-05)); and to imaging records from July 2020 (*id.* at 676-77 (citing *id.* at 661-65)). While the ALJ provided few specific pincites like those identified by the undersigned, her discussion made clear which records in particular she was referencing. The ALJ noted that "[b]ased on [Claimant']s complaints of increased pain and the physical findings," his treating surgeon recommended a lumbar fusion surgery. (*Id.* at 676 (citing *id.* at 596-611).) She summarized, "Overall, the evidence reveals improvement at tome [*sic*] visits and worsening at other visits." (*Id.* at 676.) She concluded that "while the evidence reveals limitations that would preclude him from performing any type of strenuous work activity, such as his past relevant work, there is nothing suggesting he is unable to perform a range of sedentary work." (*Id.* at 673.) She also included several statements specifically tying particular groups of records to specific limitations. She noted that avoiding strenuous work activity (i.e. medium or heavy work) and concentrated exposure to vibrations and hazards was necessary based the findings of Claimant's lumbar MRI. (*Id.* at 673.) She noted that due to his limited range of motion, certain postural limitations needed to be added to the RFC including limitations on overhead reaching with his right upper extremity and that his antalgic gait justified reducing his RFC to sedentary work. (*Id.* at 674-75.) She also cited in support to the findings of CE Dr. Urda. (*Id.* at 678 (citing *id.* at 387-93).) While she did misstate the date of a few records in her summation, she correctly summarized the relevant findings from those visits and the mistake regarding timing does not affect her overall interpretation of the trends present in Claimant's records.

Claimant pointed to several records that he claimed cast doubt on the ALJ's analysis and that revealed her interpretation to be a selective one.  Again, an ALJ need not cite to every piece of evidence in the record for his or her decision to be based upon substantial evidence.  *Simons*, 114 F. App'x at 733 (quoting *Craig,* 212 F.3d at 436); *Thacker*, 99 F. App'x at 665.  Claimant is correct that substantial evidence does not permit an ALJ to entirely ignore contrary evidence, but given the language of the ALJ's decision quoted above, the ALJ did not do that in this case.  In particular, Claimant criticized the ALJ for not discussing his treating surgeon's recommendations regarding surgery.  The ALJ did note that surgery was recommended.  (R. at 676 (noting that during October 2019 orthopedic visit with Dr. Rouben that "[b]ased on [Claimant']s complaints of increased pain and the physical findings, a lumbar fusion as recommended").)  While the ALJ did not mention that, as the undersigned noted above, in the last visit of record with Dr. Rouben in April 2020, Dr. Rouben felt that based on the success of the radiofrequency ablations Claimant could avoid surgery (*id.* at 602), the undersigned can find no error in the ALJ's failure to include a lengthy discussion of a course of treatment that was no longer recommended.

Having compared the record to the ALJ's decision, the undersigned cannot say that the ALJ selectively cited or mischaracterized the record.  The ALJ did not state that Claimant received total pain relief or resolution of his conditions from any of his attempted treatments.  She merely found that the record did not support a complete inability to perform work.  While this is not the conclusion Claimant may have wished for, the ALJ's opinions are founded on substantial evidence in the record.  The undersigned admits that in Claimant's case weighing whether substantial evidence supports the ALJ's decision is a close call given the consistency of Claimant's symptoms and reports of pain.  But "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986)).  Here, based on the undersigned's review of the entire record, the undersigned cannot say that the ALJ's decision falls outside this zone of choice.  Claimant's argument amounts to nothing more than an attempt to point to other evidence in the record he claimed supported an opposite conclusion to that reached by the ALJ.  This is insufficient to disturb the ALJ's decision in this matter.

Accordingly, the undersigned finds Claimant's argument that the ALJ selectively cited the record to be without merit.

### b)      Closed Period of Disability

Claimant argued that the ALJ erred in not awarding him a closed period of disability given how long his providers kept him off work.  (DN 14, at PageID # 1408.)  Claimant inaccurately contended that the ALJ did not address this issue.  (*Id.*)  To the contrary, the ALJ stated as part of her RFC determination that while it was clear that Claimant could not return to his past work as a medical transporter "there [wa]s nothing suggesting that his injuries resulted in limitations that precluded all work activity for a period of [twelve] continuous months."  (R. at 675.)  This is a finding regarding his lack of entitlement to a closed period of disability.

The record does contain numerous instances where a provider directed him to be "off work."  In particular, his providers at Aptiva filled out a number of work release forms dictating that as to "work status/follow up," Claimant was not to "return to work until reevaluated on" particular dates or after the completion of particular treatments.  (*Id.* at 425, 428, 430, 431, 434, 441, 443, 446, 449, 453, 600, 603, 611.)  However, these conclusory statements by his providers do not count as medical opinions under the applicable regulations.  20 C.F.R. § 416.913(a)(2) defines a medical opinion as "a statement from a medical source about what you can still do despite

your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D) and (a)(2)(ii)(A) through (F) of this section."  20 C.F.R. § 416.913(a)(2) (2021).  The relevant abilities for adults are defined as:

> (i) Medical opinions in adult claims are about impairment-related limitations and restrictions in:
>
>> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>>
>> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>>
>> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>>
>> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id.* § 416.913(a)(2)(i).  A statement that Claimant must be "off work" until a particular date is not a statement about impairment-related limitations or restrictions in any of those categories.  Instead, the regulations provide that a statements that a claimant is or is not able to work or perform regular and continuing work are "[s]tatements on issues reserved to the Commissioner" that are "[e]vidence that is neither valuable nor persuasive," and an ALJ is not required to "provide any analysis about how [he or she] considered such evidence in [his or her] determination or decision." 20 C.F.R. § 416.920b(c)(3)(i) (2021).  *Cf. Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 246 n.1 (6th Cir. 2015) (decided under definition of medical opinion that applies to claims filed before March 27, 2017); *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012) (decided under definition of medical opinion that applies to claims filed before March 27, 2017).  As such,

these off work slips do not support Claimant's entitlement to a closed period of disability. Claimant offered no other specific justification for his entitlement to a closed period of disability aside from his arguments about the overall invalidity of the ALJ's RFC determination that the undersigned has or will address elsewhere herein.  Therefore, the undersigned finds Claimant's argument regarding his entitlement to a closed period of disability to be without merit.

### c)      Pain

Claimant also argued that the ALJ erred in evaluating his pain.  (DN 14, at PageID # 1401-02, 1410).  When forming an RFC, an ALJ must assess the claimant's subjective allegations alongside medical records and physician opinions. 20 C.F.R. §§ 416.920c, 416.929(a). A claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that her or she is disabled.  *See* 20 C.F.R. § 416.929(a).  Instead, there must be objective medical evidence that a claimant has a medical impairment(s) that "could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence . . . would lead to a conclusion that [claimant] [is] disabled."  *Id.*  In evaluating a claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See id.* § 404.929(c)(2), (c)(3).

Other than general references to the standards an ALJ must follow when evaluating a Claimant's subjective symptoms, including pain, Claimant largely relied on his argument the undersigned rejected above that the ALJ selectively cited the record.  Claimant also argued that the ALJ erred in her treatment of his daily activities because in her citation to his ability to play basketball after an injection or perform activities with his children, she "failed to state how long

the relief lasted that allowed him to participate in these activities or whether there were reoccurrences of pain." (DN 14, at PageID # 1403.) The undersigned disagrees. As set forth above, the ALJ never stated that Claimant's treatments completed alleviated his pain and recognized the cycle of improvement and decline presented by the record. Further, the ALJ cited to numerous medical records the undermined the Claimant's complaints of disabling pain and that discussed Claimant's lack of side effects from his medications and treatments. As to her discussion of his daily activities, she did not impermissibly equate Claimant's daily activities with his ability to perform sustained work; she merely used them as evidence that "his activities, at least at times, are not as limiting as reported." (R. at 677.) Overall, the undersigned finds that Claimant has failed to demonstrate any specific error in the ALJ's assessment of his pain and that his arguments to that effect are without merit.

### d)  Opinion Evidence

Claimant argued that the ALJ erred in her evaluation of the opinion of CE Dr. Urda and his treating surgeon Dr. Rouben. The new regulations for evaluating medical opinions are applicable to Claimant's case because he filed his application after March 27, 2017. Pursuant to 20 C.F.R. § 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[3] 20 C.F.R. § 416.920c(a). Instead,  an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation:  supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical

---

[3] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. § 416.927(c)(2) (2021).

source's medical opinions." 20 C.F.R. § 416.920c(a), (b)(2).  An ALJ is not required to explicitly discuss how he or she weighed the other regulatory factors of relationship with the claimant, specialization, and other factors.  20 C.F.R. § 416.920c(b)(1)-(2).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations.  20 C.F.R. § 416.920c(b).  *But see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims").  However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally.  *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ

clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

The undersigned will consider the ALJ's treatment of the opinions of Drs. Urda and Rouben below.

### (1)    CE Dr. Urda

CE Dr. Urda examined Claimant on May 27, 2019.  (R. at 387-92.)  In his physical examination of Claimant, Dr. Urda found that Claimant had 5/5 grip strength bilaterally, normal station and gait, and that sensation to palpation was intact for Claimant's upper and lower extremities.  (*Id.* at 388.)  He documented right shoulder flexion of 90 degrees, left shoulder flexion of 150 degrees, right shoulder abduction of 110 degrees, and left shoulder abduction of 150 degrees.  (*Id.*)  However, he noted that "[a]dduction, internal and external rotation w[ere] all within normal limits." (*Id.*)  He documented full range of motion of Claimant's cervical spine, both knees, feet, and ankles.  (*Id.* at 388-89.)  As to Claimant's lumbar spine and hips, he found reduced range of motion.  (*Id.* at 389.)  He opined that Claimant was "capable of hearing, seeing, and speaking"; "capable of standing, sitting and walking"; "capable of bending and twisting at the waist"; and "limited in his ability to work above the shoulders especially on the right." (*Id.* at 389-90.)  The ALJ found Dr. Urda's opinion to be persuasive "because it [wa]s consistent with and supported by the evidence as a whole." (*Id.* at 678.)  In particular, she noted Dr. Urda's range of motion findings as compared to the evidence of record generally, "which reveal[ed] some reduced range of motion in the right shoulder at times, but normal at other times." (*Id.*)

Claimant argued that the persuasiveness the ALJ ascribed to Dr. Urda's opinion was improper because Dr. Urda had no prior records to review, including any imaging records.  (DN 14, at PageID # 1407.)  As the ALJ relied in particular on Dr. Urda's own findings regarding range

of motion and their consistency in her view with other findings in the record, whether Dr. Urda knew of those findings or not is irrelevant to the reliance placed on his findings by the ALJ. As to the lack of imaging records, the undersigned finds that Claimant has not demonstrated how the lack of records impacted the ALJ's analysis given that the ALJ independently analyzed the imaging records Claimant argued Dr. Urda did not. Since the records themselves were taken into account in the ALJ's decision, the undersigned finds Claimant has failed to shown any error in the ALJ's reliance on Dr. Urda's physical examination and opinion. To the extent Claimant intended to argue some procedural violation in the ALJ's analysis, the undersigned finds that the ALJ sufficiently discussed the required regulatory factors.

### (2)   Dr. Rouben

Claimant's treating orthopedic surgeon, Dr. Rouben, provided an opinion on November 11, 2019, that in the ALJ's words "essentially indicate[d] that the [C]laimant is bedridden." (R. at 678.) Dr. Rouben opined that due to Claimant's "neural compression, herniation, [and] degenerative axial collapse at the L5-S1 level with bilateral foraminal stenosis that needs surgical intervention," Claimant could never perform any lifting or carrying of any amount from 0-100 lbs; could sit, stand, and walk only five to ten minutes at a time without interruption; needed to be lying down for up to eight hours per day; could never perform any overhead or other reaching, handling, fingering, feeling, pushing, or pulling with his right arm; never operate foot controls with his right foot; never climb stairs, ramps, ladders, or scaffolds; never balance, stoop, kneel, crouch, or crawl; never be around unprotected heights and moving mechanical parts; and only occasional operate a motor vehicle. (*Id.* at 590-94.) The ALJ found Dr. Rouben's opinion to be not persuasive and inconsistent with and unsupported by the evidence of record. (*Id.* at 678.) She noted that the evidence revealed Claimant had a good response to treatment and cited to evidence of Dr.

Rouben's own recognition—at a date *after* he provided his opinion regarding Claimant's abilities—of Claimant's successful response to radiofrequency ablations. (*Id.*) She also explained, "[E]ven at times when the [C]laimant was complaining of significant pain, he was not alleging limitations as severe as Dr. Rouben assessed." (*Id.*) She concluded that there was no support for limitations as extreme as Dr. Rouben's in the record. (*Id.*)

Claimant challenged the ALJ's assessment of the evidence, citing to various portions of Dr. Rouben's records that he claimed supported the limitations opined by Dr. Rouben. (DN 14, at PageID # 1405, 1407-09.) But based on the summation of Dr. Rouben's records provided above, Claimant himself appears to be the one selectively citing to the records in support of his contention regarding the ALJ's error. The undersigned finds that the ALJ's discussion comported with the procedural requirements of the regulations and included a sufficient discussion of the required factors. In view of the undersigned's characterization of the records above, the undersigned also finds that Claimant's contentions regarding the ALJ's inaccurate summation of Dr. Rouben's and other records is without merit. While admittedly not mentioned by the ALJ, the undersigned finds that the significance of many of the records on which Claimant relies to support Dr. Rouben's opinion and undermine the ALJ's analysis is mitigated by Dr. Rouben's changed opinion regarding Claimant's need for surgery. Claimant has failed to demonstrate any error in the ALJ's assessment of Dr. Rouben's opinion.

### e)    Substantial Evidence Generally

Based on the conclusions above, the undersigned finds that the ALJ's RFC determination was supported by substantial evidence. Her analysis more than surpasses the threshold for substantial evidence, which is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard,

a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations.   And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). Claimant did nothing more than point to other evidence in the record he claimed supported an opposite conclusion to that reached by the ALJ.   However, this Court's role is not to second-guess the ALJ's conclusions.   *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman,* 693 F.3d at 714.

### 2.    Step Five

Claimant also argued that the ALJ's Finding No. 9 was in error because the hypothetical questions the ALJ posed to the vocational examiner ("VE") did not accurately portray Claimant's impairments.   (DN 14, at PageID # 1411.)   At step five, the ALJ has the burden of demonstrating that there exists a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and past work experience.   20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. § 416.960(c) (2021); *Jordan*, 548 F.3d at 423.   The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations.   *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).   But a VE's testimony can constitute substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the economy, *Bradford v. Sec'y Dep't. of Health & Hum. Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), only so long as the VE's testimony is based on a hypothetical question that "accurately portrays [a claimant's] individual physical and mental impairments."   *Varley v. Sec'y of Health & Hum.*

*Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).  *See also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).  "However, the ALJ is only required to incorporate into the hypothetical questions those limitations which have been accepted as credible."  *Hare v. Comm'r of Soc. Sec.*, 37 F. App'x 773, 776 (6th Cir. 2002); *see also Stanley v. Sec'y of Health & Hum. Servs.,* 39 F.3d 115, 118-19 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.").  The undersigned has already found above the that ALJ's determination of Claimant's RFC was supported by substantial evidence.  Thus, the ALJ was not required to include additional limitations related to range of motion or the other issues raised by Claimant in her hypothetical to the VE, and the VE's testimony constitutes substantial evidence to support her step five determination.

Accordingly, the undersigned finds that Claimant has failed to demonstrate any reversible error in the ALJ's step five analysis.

## III.   RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:     Counsel of Record

January 31, 2023                                              <u>**Notice**</u>

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all Parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).